McMILLAN, Judge.
Appellant was convicted, after a trial by jury, of the offense of robbery in the first degree in violation of § 13A-8-41, Code of Alabama (1975), and sentenced to twenty years in the State penitentiary. From said conviction and sentence, this appeal follows. For the reasons outlined below, the judgment of the trial court is due to be affirmed.
On September 29, 1984, the appellant entered the Wal-Mart Store in Auburn, Alabama, and was observed by several employees acting in a “suspicious” manner. One of the security officers for the store testified that he carefully observed the appellant because he appeared to “be paying more attention to who was looking at him than what he was actually looking at.” The security officer testified that the appellant left the store wearing a black jacket which appeared to belong to Wal-Mart. Approximately five to ten minutes later, the appellant returned (still wearing the jacket), and went to the jewelry department. When the appellant started to leave the store for the second time, the security officer stopped him, identified himself and informed the appellant that he was wearing a jacket which belonged to the Wal-Mart Store.
After the security officer examined the jacket, he determined that it was the property of Wal-Mart and told the appellant that he would need to remain at the store until the police arrived. At this point, the appellant became “very hostile,” grabbed the jacket, and stated that he was going to leave the store. The security officer summoned the manager and another employee and attempted to detain the appellant, who continued to insist that he would not wait at the store until the police arrived. As the manager and another employee approached, the appellant reached into his pocket, and the following then occurred:
“And as he reached into his pocket I grabbed his hand; and he pushed me away. And he reached back into his pocket and I reached forward to catch his hand again. He pulled out a silver looking knife and swung it at me like that (indicating) and cut me on the end of the hand. And then turned it to make a stabbing motion. And said, ‘I’m going to hurt you, David. I’m going to hurt you.’ *547 And we backed out and he ran out the front door of the store.”
The security officer testified that he observed the appellant for approximately five or six minutes and described his appearance as follows:
“He had on a burgundy colored hat, kind of a pompadour hat, with yellow feathers in the side. His hair was fairly long, came out from under his hat, and it was greasy looking, kind of processed. He had a little goatee. And he had on a maroon colored sweater, a pullover type. And it had some emblems across the front of it, I believe kind of a diamond pattern. And he had on red, or maroon colored, pants and red shoes. He had on a black jacket that was ours. He had on a ring, a large kind of diamond clustered ring. A big thick, it’s not a rope chain but another type of chain. A real thin gold colored watch, that appeared to be like a lady’s watch; you know, just the style of it. And he had the knife that he had in his hand, when he opened the knife up; which was pewter color.
The appellant ran from the store and through an adjacent field, where the stolen jacket was discovered the next day.
The customer service manager of the Wal-Mart store testified that, on the night in question, he observed the appellant enter the store dressed in red shoes, red hat, and red shirt. Although the appellant was not wearing a black jacket when he entered the store, he was wearing a black jacket over his red outfit when he left the store. The appellant was still wearing the black jacket over his red outfit when he returned to the store a few minutes later.
The manager of the Wal-Mart Store testified that, on the night in question, the security officer summoned him to the back of the store. At that time, the security officer and the appellant were discussing the ownership of the jacket and the appellant was refusing to wait for the police. Although the appellant stated that he had purchased the jacket some four or five months previously, the manager testified that they had just received the jackets within the past two weeks. When the manager informed the appellant that he would need to remain at the store until the police arrived, the appellant started “coming toward us with a knife.” The appellant then fled from the store, with the jacket.
At the close of the State’s evidence, defense counsel moved to exclude the State’s evidence for failure to present a prima facie case. According to defense counsel, the evidence presented by the State did not prove that Wal-Mart was in legal possession of the jacket and also did not prove that force or fear was used to deprive the owner of the jacket. Defense counsel also argued that the evidence would possibly support a charge of theft, but would not be proof of robbery. The trial court denied the motion.
The defense presented its case and called the appellant’s “lover” to the stand. She testified the appellant was with her the entire time the events apparently took place. This witness also stated that she would not lie for the appellant.
The appellant took the stand to testify in his own behalf. He said that on the day in question, he was with his girl friend during the afternoon and then went to shoot some dice. He then returned to his girl friend’s house and spent the entire night with her, he said. The appellant stated that he did not go to the Wal-Mart store in Auburn on September 29, 1984, and, additionally, stated that he had “never seen” the hat and jacket supposedly worn by the suspect on the night in question. Of his own “personal knowledge,” the appellant could not explain how his car came to be parked in front of the Wal-Mart store in the fire zone on the night in question. The appellant also testified that he had been previously arrested for the offense of “fighting” but had not been convicted. On cross-examination, the appellant stated that the “fighting” offense involved the use of knives but explained that they were just “regular” kitchen knives.
After the defense rested, the trial court instructed the jury on the applicable law. After their deliberations, the jury returned *548 a verdict finding the appellant guilty of robbery in the first degree, as charged in the indictment. A sentencing hearing was scheduled, at which time the appellant admitted that he had been convicted of the offense of third degree burglary in Syracuse, New York, in 1971. In pronouncing its sentence, the trial court took into consideration the gravity of the crime, as well as the fact that a weapon had been used, and concluded that the appellant should receive a sentence of 20 years in the penitentiary.
On appeal, the appellant raises two issues: (1) whether the robbery conviction was proper, if, as he contends, the violence occurred after a “completed theft and only in response to an accusation of theft”; and, (2) whether the State proved the ownership and theft of the property in question. For the reasons outlined below, both of these issues are decided adversely to the appellant.
I
The first issue raised by the appellant concerns the propriety of appellant’s conviction for first degree robbery even though he contends the violence used in the present case was not used for the “purpose of accomplishing theft.” According to the appellant, the taking of the jacket was complete once the appellant left the Wal-Mart store. At that point, according to the appellant, he had “successfully severed the ownership [of the jacket] from Wal-Mart”[1] and had successfully escaped prior to the time that he re-entered the Wal-Mart store. Appellant cites cases from other jurisdictions which he asserts stand for the proposition that he cannot be convicted of robbery if the violence which occurred is “unrelated to any attempt to obtain the property during the theft or to escape with it.”
Pursuant to the provisions of § 13A-8-41(a)(1), Code of Alabama (1975), a person commits the crime of robbery in the first degree if he violates the provisions of § 13A-8-43, Code of Alabama (1975), and is “armed with a deadly weapon or dangerous instrument.” The offense of robbery in the first degree includes the elements of third degree robbery, as set out below:
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
“(2) threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.” § 13A-8-43(a), Code of Alabama (1975).
The phrase “in the course of committing a theft” has been defined, under Alabama law, to include those acts which “occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission.” § 13A-8-40(b), Code of Alabama (1975).
From the evidence presented at trial, it is apparent that the appellant used force in an attempt to escape from the Wal-Mart store. Appellant, however, argues that, in this case, there was a “successful theft,” which was later followed by the use of force to resist mere apprehension. This, according to the appellant, would not constitute the offense of robbery.
The present case can be factually distinguished from the recent case of Cosher v. State, 469 So.2d 679 (Ala.Cr.App.1985). In Cosher, this court, per Presiding Judge Bowen, reversed and remanded a conviction of robbery in the first degree because of the absence of the necessary element of “force.” In reaching this conclusion, this court noted as follows:
“The defendant’s conviction for robbery in the first degree is due to be *549 reversed on authority of Harris v. State, 451 So .2d 406, 410-411 (Ala.Cr.App.1984). Here, as in that case, ‘defendant’s conduct did not constitute robbery for the reason that he neither used nor threatened any force against the alleged victim “with intent to compel acquiescence to the taking of or escaping with the property” that he had stolen or had attempted to steal.’ Harris, supra. The annotation at 93 A.L.R.3d 643 (1979) reveals that there is extremely little support for the proposition that the use of force merely to effect an escape, after the property taken has been abandoned, supplies the element of force necessary to make the taking a robbery.” (Citation omitted.) Id. at 680.
Factually, this case can be distinguished from Cosher. In Casher, the stolen cigarettes had been recovered by the store employees some two to three minutes prior to the time that the violence or force took place. In the present case, however, the appellant used force to flee from the store with the stolen merchandise. Since the appellant in this case did not “abandon” the stolen property prior to the time that the force was used, the offense was clearly one of “robbery” and not a lesser offense.
At least two other Alabama cases are factually similar to the present case, with one significant distinction. In Laney v. State, 417 So.2d 624 (Ala.Cr.App.1982), this court rejected the appellant’s argument that a “successful theft followed by use of force to resist apprehension later does not constitute robbery.” In Laney, the appellant took three bottles of wine from a grocery store, without paying for the wine. Store employees pursued the appellant and, in the course of apprehending him, the appellant threatened the employees with a weapon. In upholding the appellant’s conviction of first degree robbery, this court, per Presiding Judge Harris, concluded that there was “no doubt from the record before us that the State presented sufficient evidence that appellant was armed with a deadly weapon and attempted to use the same while in immediate flight after the commission of the theft.” Id. at 624.
In Barnett v. State, 437 So.2d 668 (Ala.Cr.App.1983), the appellant’s conviction of third degree robbery was upheld on appeal and this court concluded that the appellant “used force or threats of force in an attempt to effectuate the theft of goods from Kroger Supermarket.” In Barnett, the appellant was observed leaving the Kroger Supermarket with merchandise which he had not purchased. Employees pursued the appellant, struggled with him, and were then threatened by the appellant with a knife. As this court in Barnett noted:
“ ‘The ... use or threat of force in escaping, broadens the scope of robbery. There should be no distinction between cases in which force is used to gain possession of another’s property and cases in which possession is gained and then force is used to retain possession. ... The expansion, of course, is limited to threats and assaults to effect an immediate escape....’” Id. at 669, quoting Commentary, §§ 13A-8-40 through 13-8-44, Code of Alabama (1975).
In the present case it is apparent that the appellant used force in order to retain the possession of the stolen merchandise.
The significant factual distinction between the present case and the facts as outlined in Laney and Burnett is that the appellant in the present case returned to the Wal-Mart store, wearing the jacket, and then left the store for the second time with the stolen merchandise. Mr. Harold David Clark, security manager, Wal-Mart, testified that he inspected the jacket which the appellant was wearing after he returned to the store and informed the appellant that he would be detained until “the police could get there and clear the matter up.” At this point, the appellant became “very hostile” and the appellant “took [the jacket] back from me and said he wasn’t going to stay. That he was going to leave.” A struggle then ensued and the appellant pulled a knife and fled from the store. It is apparent that this force was sufficient to constitute the offense of robbery under the Alabama statute.
*550 II
The second issue is stated in appellant’s brief as follows: “Must the State prove ownership of property and theft of that property in a robbery case?” Although the appellant states in his argument that the “State failed to prove any theft,” for the reasons discussed in Issue I, it is apparent that a theft was committed and no convincing argument to the contrary is presented by the appellant.
Appellant cites no authority for this argument and merely concludes that the State “did not properly follow basic Alabama evidence law”. Since the appellant has failed to cite any legal authority for this additional issue, if in fact it is an additional issue, the argument is waived. Vinzant v. State, 462 So.2d 1037, 1039 (Ala.Cr.App.1984).
AFFIRMED.
All the Judges concur.

. Note that § 13A-8-44, Code of Alabama (1975), provides as follows: "No person may submit in defense against a prosecution for robbery in any of its degrees that there was no theft because the taking was under a claim of right. Claim of right is not a defense under this Article.” Surely it cannot be said that a person who steals the property of another can then claim superior title to the property as against the rightful owner.