BROWN, Judge.
The appellant, Dea: Fuqua, was convicted of robbery in the third degree, a violation of § 13A-8-43, Code of Alabama 1975. The appellant was sentenced, as a habitual felony offender with five prior felony convictions, to 25 years’ imprisonment.
The facts adduced at trial are as follows. On May 26, 1995, Haitham Musa, an employee of New York Fashion clothing store, saw the appellant enter the CSO clothing store, located across the mall aisle from New York Fashion. Musa testified that when he first noticed the appellant, she was wearing “white spandex” and a white shirt, she had on a straw hat, and she was carrying a bag.
A short time later, Musa saw the appellant leave the CSO store wéaring a pair of overall shorts. The appellant walked rapidly toward the mall exit located near the Sears department store. As the appellant walked quickly away, she looked behind her once or twice.
Musa testified that the manager, who Musa knew only as Katrina, of the CSO store came out of the store, looked at the appellant, and then looked at him. According to Musa, Katrina seemed unsure of what to do. When Musa.indicated that he was not going to stop the appellant, Katrina went back into the CSO store and then came out of the store with Yvon Riddle, an assistant manager of the CSO clothing store. Musa told the CSO employees in which direction the appellant had gone, and they ran after her.
Riddle testified that she had watched the appellant while she was in the CSO store. She saw the appellant put on a pair of shorts and walk around the store in them. When Riddle diverted her attention momentarily, the appellant left the store, without paying for the shorts. Riddle testified that Katrina held up an empty hanger and indicated that the appellant had taken the shorts. According to Riddle, Katrina had already “spoken” with Musa at that point. Riddle testified that she and Katrina decided to pursue the appellant.
Riddle and Katrina ran through the mall in pursuit of the appellant. They ran out into the parking lot, but they did not see her. Katrina returned to the CSO store, and Riddle continued to search for the' appellant. Riddle ran through Parisians department store and then through the mall looking for the appellant. Riddle stopped at a couple of kiosks in the mall, including the security desk, to inquire whether anyone had seen a person matching the appellant’s description. Approximately eight minutes after she left the CSO store in pursuit of the appellant, Riddle saw the appellant at Hibbett’s sporting goods store, looking at a pair of shoes.
Donna Summers, a mall security officer who was shopping before going on duty, noticed the appellant looking at a pair of shoes in Hibbett’s. The appellant appeared to be nervous. She testified that someone yelled for a security officer and that she responded.
Riddle and Summers approached the appellant in Hibbett’s and asked her to accompany them to the mall security office. When the appellant asked why, Riddle told her that she believed that she had stolen some merchandise. Riddle testified that the appellant denied taking anything, and voluntarily opened a bag she was carrying to reveal its contents. When Riddle responded that the appellant was wearing what she had stolen, the appellant shoved Summers in the chest and fled.
Riddle ran after the appellant. The appellant ran around a corner, knocking over a table of books. Summers yelled for someone to. telephone the police, and she ran after Riddle and the appellant. Riddle caught the appellant as she was about to exit the mall, *819 and a scuffle ensued. During the scuffle, the appellant scratched and kicked Riddle. The appellant also kicked a male bystander who tried to intervene. Police officers arrived and handcuffed the appellant. According to Riddle, the whole incident took only 20 minutes.
The appellant contends that the state failed to present a prima facie case of robbery in the third degree. We disagree.
Section 13A-8-43, Code of Alabama 1975, which defines third-degree robbery, provides, in pertinent part:
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
“(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
“(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
(Emphasis added.) Section 13A-8-40(b), Code of Alabama 1975, states: “Tn the course of committing a theft’ embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission.” (Emphasis added.)
The appellant alleges that the state failed to prove that she used force against Riddle and Summers in the immediate flight after the commission of the theft, as required to sustain a conviction under § 13A-8-43, Code of Alabama 1975. Specifically, the appellant argues that the theft was complete when she left the CSO store without incident and without being immediately pursued; therefore, she maintains that the state’s evidence proved, at most, that she used force to elude capture following a completed theft and that evidence does not support a conviction for robbery in the third degree.
The appellant relies on Ex parte Sapp, 497 So.2d 550 (Ala.1986), in support of this contention. In Ex parte Sapp, the defendant stole a jacket from a Wal-Mart discount store. Approximately 5 or 10 minutes after stealing the jacket and leaving the store, the defendant returned to the Wal-Mart store, where he was confronted by a Wal-Mart employee, and a struggle ensued. The Alabama Supreme Court held that the “armed force ... was not used ‘in the course of committing’ the theft or ‘in immediate flight after the ... commission,’ but took place after the theft itself clearly had ceased.” 497 So.2d at 551 (emphasis added).
In Buchannon v. State, 652 So.2d 799 (Ala.Cr.App.1994), this Court addressed an issue similar to the one the appellant raises in this appeal. In Buchannon, “[t]he appellant ... arguefd] that because the threat occurred so far from the scene of the theft and after several instances in which his pursuers lost sight of him, [the threat could not] be deemed to have been made in ‘immediate flight’ from the theft.” 652 So.2d at 801. In support of his proposition, the defendant cited Laney v. State, 417 So.2d 624 (Ala.Cr.App.1982), McFarland v. State, 581 So.2d 1249 (Ala.Cr.App.1991), and Gordon v. State, 552 So.2d 901 (Ala.Cr.App.1989). This Court found:
“In Laney, the shoplifter’s threat and apprehension occurred only ‘thirty feet from the front door of the store.’ 417 So.2d at 624. That case, however, is not authority for the proposition that, for a threat to be considered to have been made in ‘immediate flight’ from a shoplifting, the threat must be made within the confines of the store’s parking lot or any other arbitrary boundary.
“We acknowledge that, in McFarland, this Corat noted that the accused, who had shoplifted a screwdriver from a Sears department store,, was ‘constantly under surveillance’ by Sears employees until the time of his apprehension, 581 So.2d at 1253, and that in Gordon, we noted that ‘[a]t no time did the store personnel ...' lose sight of the [accused] from the time of the theft until the time the [accused] produced a deadly weapon,’ 552 So.2d at 904. However, we do not interpret those cases to establish the rule that a shoplifter’s flight is not ‘immediate’ if his pursuers momentarily lose sight of him during a chase.
*820 “We hold that as long as the flight, pursuit, and eventual apprehension of the accused are part of a continuous series of events directly precipitated by the accused’s theft, then the accused’s acts occur in ‘immediate flight after the ... commission’of the theft.”
Buchannon, 652 So.2d at 801. (Emphasis added.)
In the present ease,' the state’s evidence showed that the appellant left the CSO clothing store wearing a pair of shorts she had not paid for. As she walked rapidly away from the store, she glanced behind her, apparently to see if she had been followed. Within moments, two CSO employees pursued the appellant. After losing sight of her, Riddle, the assistant manager, searched continuously until she located the appellant in another store in the mall, approximately eight minutes after she had left the CSO store. Riddle and Summers, the mall security guard, approached the appellant and asked her to accompany them to the security office. The appellant denied having stolen anything. When Riddle confronted the appellant with the fact that she was wearing the merchandise that she had stolen, the appellant pushed Summers and fled. Riddle then chased the appellant and captured her just as the she was about to exit the mall. A struggle ensued, during which the appellant kicked and hit Riddle and a bystander.
Viewing the evidence in light most favorable to the state, White v. State, 546 So.2d 1014, 1016-17 (Ala.Cr.App.1989), we find that the state presented evidence from which the jury could infer that the “flight, pursuit, and eventual apprehension of the [appellant were] part of a continuous series of events, directly precipitated by the [appellant’s] theft” of the shorts. Buchannon, 652 So.2d at 801. Accordingly, the jury was free to infer that the force the appellant used against Riddle and Summers occurred in “immediate flight” after the theft.
Contrary to the appellant’s assertion, we are not persuaded that the CSO employees’ brief hesitation before pursuing the appellant broke the continuity requirement set forth in Buchannon, above. The facts in the present case are clearly distinguishable from the facts in Ex parte Sapp, cited by the appellant (“wherein the defendant, having successfully completed the theft unnoticed, returned to the store minutes later and then used force to escape after being questioned by store employees,” McFarland v. State, 581 So.2d 1249, 1253 (Ala.Cr.App.1991)). In the instant case, one of the CSO employee observed the appellant leave the store wearing the stolen merchandise. That CSO employee hesitated only momentarily, in order to gather her wits and to seek assistance, before pursuing the appellant.
Moreover, the fact that the appellant successfully managed to elude Riddle for approximately eight minutes following the theft does not mean that she was not in “immediate flight” when she was apprehended. Buchannon, 652 So.2d at 801. The search for the appellant began almost immediately after the appellant left the CSO store wearing the stolen merchandise, and it continued, without interruption, until the appellant was found, some eight minutes later, still wearing the stolen merchandise.
The jury was charged on the offense of robbery in the third degree and on the concept of “immediate flight,” as well as on the lesser included offense of third-degree theft. The jury heard all of the evidence and found the appellant guilty of the offense of robbery in the third degree. The jury’s verdict is supported by the record; the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.